No. 2-09-0389    Filed: 11-23-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08--CF--1103 |
| MATTHEW J. KONWENT, | ) ) | Honorable Kathryn E. Creswell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Matthew J. Konwent, appeals a judgment revoking his probation and resentencing him to six years' imprisonment for burglary (720 ILCS 5/19--1(a) (West 2008)). On appeal, he contends that the State failed to prove that he violated a condition of his probation. We affirm.

In 2008, defendant pleaded guilty to burglary and was sentenced to 24 months' probation with 180 days' periodic imprisonment. On January 17, 2009, the State petitioned to revoke his probation, alleging that he "left Serenity House," a halfway house, "against advice." On January 26, 2009, the trial court held a hearing at which defendant was the sole witness.

On direct examination by the State, defendant testified as follows. On September 3, 2008, he was sentenced to Treatment Alternatives for Criminal Justice Clients probation (TASC probation) (see 20 ILCS 301/40--10 (West 2008)). As he understood at the time, one condition of his probation was to complete inpatient treatment followed by time in a halfway house. Defendant completed

inpatient treatment. On or about December 1, 2008, he entered Serenity House for a 90-day term. At the time, he was told that he would need permission to leave the building.

Defendant testified that, on December 30, 2008, he was living at Serenity House, working during the day on weekdays and returning each evening. The rules required him to be back by 6 p.m. However, on December 30, 2008, he did not return at all. Defendant returned a few days later to retrieve his belongings, but he never came back to complete his treatment. Therefore, he did not complete the 90-day halfway house residency required by his TASC probation.

On cross-examination by his attorney, defendant testified as follows. On December 30, 2008, he was in Chicago, helping a friend deliver wholesale gym shoes. Sometime before 6 p.m., he realized that he was not going to get back to Serenity House on time. Most of the staff members were not there, so defendant called a "senior resident," Mike Z., and explained that he was running late but that he intended to return to Serenity House sometime between 6 and 7 p.m.

Defendant's attorney then asked him, "And even though you told Mike, you know, I want to come back after 6:00, please let me in; Mike told you you couldn't come back after 6:00?" The State objected, based on hearsay, and the trial court sustained the objection. Defendant then testified that, when he returned a few days later to pick up his belongings, he spoke to Mike Z. Later, he learned that he would have to wait 14 days to go through the process for readmission to Serenity House.

Defendant testified on redirect examination that, on December 30, 2008, he did not return to Serenity House at 6 p.m., 7 p.m., or any other time. On re-cross-examination, he testified that, at some point after December 30, 2008, he called his TASC officer and his probation officer several times to inform them of his situation.

After arguments, the judge ruled for the State, explaining:

"Well, to argue that the State proved he was tardy, they didn't prove he was tardy. He never went back. It's not like he showed up at 6:30 or 7:00 o'clock and pounded on the door and they didn't let him in. And the testimony is that he sat down with the TASC people at intake, they explained the rules and regulations to him, they told him he had to be there for 90 days. He knew that he had to be back by 6 p.m. On December 30 he didn't go back, and he's never been back. So I find that [the State has] proved by a preponderance of the evidence that he violated his probation as alleged in the petition."

After a hearing, the trial court sentenced defendant as noted. He timely appealed.

On appeal, defendant contends that, under People v. Brechon, 151 Ill. App. 3d 1040 (1987), the State did not prove that he violated the conditions of his probation, as his sole infraction--missing a curfew--was not willful and did not frustrate an essential purpose of his probation. The State responds that, under People v. Jones, 377 Ill. App. 3d 506 (2007), willfulness is not an element of a probation violation, and defendant's curfew violation, whatever the extenuating circumstances, supported the judgment. For the reasons that follow, (1) we ultimately agree with the State that the trial court properly found that defendant violated his probation; but (2) we find both Brechon and Jones unsatisfactory in important respects.

We note first that the State had the burden to prove by a preponderance of the evidence that defendant violated a condition of his probation. 730 ILCS 5/5--6--4(c) (West 2008); People v. Colon, 225 Ill. 2d 125, 156-57 (2007). The trial court's finding that the State met its burden must be affirmed unless it is against the manifest weight of the evidence. Colon, 225 Ill. 2d at 158.

In Brechon, the trial court revoked the defendant's probation, finding that he had violated a condition forbidding him to leave the state without the trial court's permission. Per Army orders, the

defendant had gone to Minnesota to attend an Army reserve camp. At the probation-revocation hearing, he testified that, before leaving, he told his probation officer and his counselor that he intended to attend the camp. The probation officer could not recall whether the defendant had so informed her, but the counselor corroborated the defendant's account of the meeting. Apparently, neither the probation officer nor the counselor told him that he could not go. The defendant testified that he thought that, by telling the probation officer that he intended to leave the state, he complied with the conditions of his probation. Brechon, 151 Ill. App. 3d at 1040-42.

This court "[r]eversed and vacated" (Brechon, 151 Ill. App. 3d at 1042), explaining:

"Based on the record, the trial court stated that he [sic] believed the defendant had wilfully violated the conditions of his probation. This finding is not supported by a preponderance of the evidence ***. *** Here, defendant's counselor and defendant both testified that defendant had discussed his impending trip. Moreover, defendant's probation officer could not deny that he also discussed it with her. We conclude the findings of the trial court are contrary to the manifest weight of the evidence." (Emphasis added.) Brechon, 151 Ill. App. 3d at 1042.

This court's explanation implies that the State had to prove not merely a violation, but a willful violation. However, the applicable probation-revocation statute did not impose any requirement of willfulness. See Ill. Rev. Stat. 1983, ch. 38, par. 1005--6--4. As important, we did not discuss or even cite People v. Allegri, 109 Ill. 2d 309 (1985), in which the supreme court ruled that "[p]ersonal culpability is not required for a court to revoke a sentence of probation." Allegri, 109 Ill. 2d at 314 (holding that insanity is not a defense to a claim of probation violation). The Allegri court explained that probation is a privilege that may be revoked when the defendant's acts, culpable or otherwise,

-4-

require revocation to serve the " 'ends of justice' " (Allegri, 109 Ill. 2d at 314, quoting Ill. Rev. Stat. 1981, ch. 38, par. 1005--6--2(c)), such as protecting society. Allegri, 109 Ill. 2d at 314. Moreover, the court noted, "the statute has no requirement that such conduct even be of a criminal nature, let alone criminally culpable." Allegri, 109 Ill. 2d at 315.

For its holding, Allegri cited People v. Davis, 123 Ill. App. 3d 349 (1984), in which the defendant's TASC probation required him to obtain inpatient substance-abuse treatment. The trial court revoked his probation after he was rejected by a treatment facility and was denied treatment elsewhere. On appeal, the defendant argued that the judgment was erroneous because his violation was not willful. The appellate court disagreed. The court observed that the defendant's probation had been revoked under section 5--6--2(c) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1981, ch. 38, par. 1005--6--2(c)), which contained no willfulness requirement. By contrast, section 5--6--4(d) of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 1005--6--4(d)) specifically stated that probation may not be revoked for failure to comply with a condition that imposes a financial obligation upon the offender unless the failure was due to a willful refusal to pay. The court reasoned that to read a willfulness requirement into section 5--6--2(c) would render section 5--6--4(d) "superfluous and unnecessary." Davis, 123 Ill. App. 3d at 352-53.

Brechon took no note of Allegri (or Davis), and, insofar as it implies that willfulness is an element of any probation violation, it is unsound. We believe that Brechon, if sound at all, should be limited to its extraordinary facts. The defendant's probation violation consisted of obeying an order from the Army after he told his probation officer and his counselor that he intended to do so and they did not object. Under the circumstances, this court may have considered it unconscionable to find that the defendant had violated his probation.

Courts since Allegri have reiterated its holding that willfulness is not an element of a probation violation (except one involving a financial obligation) and that, therefore, probation may be revoked for nonculpable conduct. In People v. Cozad, 158 Ill. App. 3d 664 (1987), the defendant's probation was revoked because he violated a curfew two days in a row. On appeal, he argued that the trial court erred because his conduct resulted from his alcoholism, for which he could not afford treatment, and that the purposes of his probation could still be fulfilled. The appellate court affirmed. Citing Davis, the court reasoned, "Even if the defendant's conduct was nonculpable, it frustrated the goals of probation," rehabilitating him and protecting the public. Cozad, 158 Ill. App. 3d at 670.

In People v. Johns, 229 Ill. App. 3d 740 (1992), the defendant was placed on TASC probation, which was revoked because he failed to complete a required treatment program. The defendant did not intentionally leave treatment; he was discharged from his treatment facility because, owing to his " 'mental and/or psychiatric defects,' " the facility operator concluded that it was unable to " 'provide service.' " Johns, 229 Ill. App. 3d at 742. The defendant found no other treatment facility that would accept him. Affirming, the appellate court cited Allegri and Davis and explained that culpable conduct is not an element of a probation violation. Johns, 229 Ill. App. 3d at 742.

In People v. Neckopulos, 284 Ill. App. 3d 660 (1996), the defendant received TASC probation, which was later revoked because she failed to complete therapy, missing most of her treatment sessions. On appeal, she argued that the revocation was improper because the State had not proved that her violation was willful. (At the revocation hearing, she had testified that, while on probation, she had been "almost constantly high" (Neckopulos, 284 Ill. App. 3d at 662) and thus unable to remember the dates of her appointments. Neckopulos, 284 Ill. App. 3d at 662-63.) The

appellate court rejected this argument, holding that, under Allegri and Davis, the State did not need to prove a willful violation. Neckopoulos, 284 Ill. App. 3d at 663.

We turn to Jones. In our view, Jones's result is correct, but its reasoning is problematic.

In Jones, the defendant's probation was revoked after he violated a condition by failing to report to the probation department. On appeal, he argued that, under Brechon, the State was required to prove (but did not prove) that his failure to report was willful. This court responded in two ways. In the first part of our reasoning, we distinguished Brechon by noting that, in that case, the defendant had been led to believe reasonably that he was allowed to leave the state during his probation period. In Jones, by contrast, the defendant did not reasonably believe that he did not have to report to the probation department. Jones, 377 Ill. App. 3d at 507.

We note that this court did not hold that Brechon was no longer good law in view of Allegri; indeed, this court omitted any reference to Allegri, Davis, or the appellate court opinions following Allegri. Also, it did not explain why the Brechon defendant's belief that he could leave Illinois without the trial court's permission was reasonable, given that the terms of his probation said that he needed that permission. By distinguishing Brechon rather than calling its soundness into question, the first part of Jones's reasoning implies that Brechon is sound law (and thus must be distinguished). As we have noted, that implication is improper insofar as it suggests that nonculpable conduct cannot support finding a probation violation. Even limiting this suggestion to conduct that the defendant reasonably believes is permissible appears inconsistent with the case law and, more fundamentally, with section 5--6--4 of the Code (730 ILCS 5/5--6--4 (West 2004)), which, outside of the narrow language of section 5--6--4(d), contains no "reasonable belief" defense to a revocation petition.

In the second part of our reasoning in Jones, we rejected the premise of the defendant's argument, i.e., that the State had to prove that his violation was willful. Without citing the applicable precedents, we adopted Davis's reasoning that the omission of any willfulness requirement from the statute, other than that in section 5--6--4(d), showed that the legislature intended to impose no such requirement in cases not turning on an alleged failure to meet financial obligations. Jones, 377 Ill. App. 3d at 508. We also held that, although the defendant raised various excuses for his failure to report to the probation department, these "relate[d] to the court's exercise of its discretion to revoke probation, not to its finding of a violation." Jones, 377 Ill. App. 3d at 509.

Although the second part of our reasoning in Jones does not explicitly repudiate or limit Brechon, it appears to be inconsistent with Brechon's implication that nonwillfulness, or at least some sort of nonculpable mental state, negates the existence of a probation violation. Jones's reliance on the plain language of the Code cannot be squared with Brechon's creation of an implied exception to the no-fault principle of Allegri and Davis. Moreover, had Brechon analyzed the defendant's excuse for his conduct the same way that Jones analyzed its defendant's excuse, it would not have held that the defendant had not violated his probation, although it could still have held that the violation did not support revoking the probation. Therefore, we believe that the second part of Jones's reasoning, which implicitly rejects Brechon, is inconsistent with the first part of Jones's reasoning, which presupposes that Brechon is good law and soundly reasoned.

The doctrinal question that we must resolve is how to treat Brechon and Jones in light of the substantial authority that both opinions fail to consider. We must of course adhere to Allegri's holding that willfulness, fault, or culpability is not an element of a probation violation. The defendant's culpability is, however, still highly pertinent to the trial court's exercise of its discretion

in deciding whether to revoke the defendant's probation and, if so, deciding what new sentence to impose. (On this point, we agree with Jones.)

Aside from raising his lack of willfulness, defendant argues that finding a probation violation is inconsistent with Allegri and Davis because his failure to return to Serenity House on time did not frustrate the purposes of his probation. Defendant's argument is not well taken. Allegri, Davis, and the other opinions that we have cited (other than Brechon, which we do not find well reasoned), do not hold that the existence of a probation violation depends on the character of the condition that the defendant violated. That holding would lack support in the probation-revocation statute. The statute does not so qualify the definition of a violation, any more than it contains a qualification based on the defendant's mental state. On appeal, defendant has argued only that the trial court's finding that he violated a condition of his probation was against the manifest weight of the evidence, not that the court later abused its discretion by revoking his probation. The sole argument that defendant makes is unsupported by any reference to the type of violation that the State proved.

In any event, we disagree with defendant that his infraction did not frustrate the purposes of his probation: obtaining treatment was crucial to his rehabilitation, and his failure to observe Serenity House's curfew requirement caused his discharge from Serenity House. The situation here is similar to that created by the defendant's curfew violations in Cozad. See Cozad, 158 Ill. App. 3d at 670. Therefore, defendant's argument would fail even were it well grounded in law.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

ZENOFF, P.J., and BOWMAN, J., concur.